**CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE**

Shen Valley Masonry, Inc.

v.

S. P. Cahill & Associates, Inc.

March 25, 2002

Case No. (Law) 00-75

BY JUDGE EDWARD L. HOGSHIRE

The Court has considered Great American Insurance Company's Motion for Reconsideration and for Clarification, including the request for a stay, and, for the reasons set forth below, the motions and request are denied.

*Motion for Reconsideration*

*Failure to Consider Intervening Weekends
in Promptness Calculation*

In its Motion for Reconsideration, Great American asserts that, "even under the Court's own analysis, the [first] payment was not late considering intervening weekends." (Motion for Reconsideration Memo, p. 7.) In light of this assertion, it is helpful to revisit the time calculations in some depth, as shown below.

Under Virginia Code § 11-62.9, Contractor was obliged to pay Subcontractor within seven days from *receipt* of payment or give notice of non-payment. Under Virginia Code § 11-62.6, the date of postmark is the date when payment is deemed *made*. Thus, the statutes could be construed to read that a reasonable allowance is given for postal delays between when the payment is made and when it is received before the seven day period is triggered.

As to the first payment, there is undisputed evidence that UVA mailed a check to Contractor on July 13, 1999,[1] and that Subcontractor received payment on August 2, 1999. [Thus], twenty days elapsed between when UVA put the check in the mail and when Subcontractor eventually received the check in the mail. Even allowing for three days on both mailing transactions and accounting for a seven day turn-over requirement, Contractor was seven days late in turning over payment to Subcontractor. Moreover, there is no language in Virginia's Prompt Payment Act which indicates that the seven day turn-over requirement is a seven *business* day turn-over requirement.

For the foregoing reasons, Great American's Motion for Reconsideration on the ground that the Court failed to consider intervening weekends is denied.

### Materiality of Breach and Waiver

Great American further asserts that a "small period of time" in delay of payment strips a breach of its materiality. (Motion for Reconsideration Memo, p. 7.) Great American failed to cite support for this proposition. Applicable case law, including *In re Vecco Constr. Industries, Inc.*, 30 B.R. 945, 948-49 (Bankr., E.D. Va. 1983), and the line of cases cited on page 198 of the Court's December 11, 2001, letter opinion, oppose this proposition. It is not the length of the payment delay which makes the breach material, simply the occurrence.

In the Motion for Reconsideration, Great American resurrects the argument that Subcontractor waived its right to prompt payments by virtue of continuing to accept late payments. The Court found that the evidence as a whole did not demonstrate that Subcontractor waived its right to prompt payment. (Letter Opinion, pp. 197-99.) Great American does not advance a new theory for the Court to revisit this notion.

The Court therefore finds that insofar as the motion for reconsideration is founded on materiality of breach and waiver, it is denied.

---

[1] As Footnote 10 in the December 11, 2001, letter opinion states, the Court inferred that the date on which UVA wrote the check is also the date on which the checks were postmarked based on testimony at trial from UVA employees. [This opinion is printed at 57 Va. Cir. 189.]

*Admission of Promptness*

Great American urges this Court to reconsider its December 11, 2001, opinion because Plaintiff's Exhibit 4 *"admits* that the first payment was *not* late under the Act."* (Motion for Reconsideration Memo, p. 6 (emphasis in original).) Great American bases this assertion on Plaintiff's Exhibit 4 which indicates that this payment was not late, arguing that this constitutes an admission of promptness.

No direct evidence of dates when Contractor received the checks from UVA is in evidence; there are no cancelled checks, no deposit slips, no postmarked envelopes, etc.. In lieu thereof, a variety of lawyer-created charts attempted to indirectly establish this evidence; however, they were not unassailably probative. (See, Pl. Ex. 4; Def. Ex. 12; see also, Pl. Ex. 35.) Moreover, Contractor's affirmative representations to UVA that it was paying Subcontractor when it was actually withholding the money for its own use raises substantial credibility issues. (Pl. Ex. 8; see, Dec. 11, 2001, letter opinion, pp. 193-95.) The Court, therefore, relied heavily on Plaintiff's Exhibit 23, an unbiased UVA-generated record of dates, to determine when checks were actually received by Contractor.

The promptness of the first payment was not stipulated by the parties, nor conceded by virtue of Plaintiff's Exhibit 4. Furthermore, whether a given payment was timely is a mixed question of law and fact, both elements of which are decided by the Court in a bench trial. Accordingly, the Motion for Reconsideration based on admission of promptness is denied.

*Motion for Clarification*

Great American requests that the Court clarify whether Contractor's termination of the contract was "wrongful" or "improper." (Motion for Reconsideration Memo, pp. 7-8.) The Court found that Contractor terminated the contract without providing written notice to Subcontractor and an opportunity to correct, contravening the terms of the subcontract. (Letter Opinion, p. 199.) This constitutes "wrongful" termination, not improper termination. (Letter Opinion, p. 199.)

*Motion for Stay of the Final Order*
*Pending Determination of Liability*

Great American urges the Court to stay entry of the final order in this matter pending clarification of whether Contractor and Great American are

entitled to completion costs from Subcontractor and/or their bonding company, American Casualty Company ("CNA"). Great American asserts that the Court failed to rule upon the "open issue of CNA's liability under its performance bond." (Motion for Reconsideration, p. 2.) Essentially, Great American argues that Contractor declared default under Subcontractor's performance bond and, therefore, CNA is liable to Great American for the cost of completion, $533,404.35, regardless of the manner in which termination occurred.

The Court does not find this argument persuasive for two reasons. First, *Siegfried Constr., Inc. v. Gulf Ins. Co.*, 203 F.3d 822 (4th Cir. 2000), does not support Great American's position. No "Notices of Termination for Failure to Perform" were sent to Subcontractor or CNA and letters relating to understaffing can neither be construed as such notice nor as notice to claim under the bond; therefore, the facts in *Siegfried* are clearly distinguishable from those of the case at bar. Second, the terms of the bond to recover costs of completion were not satisfied. CNA was not notified of termination nor afforded a chance to remedy Subcontractor's performance. Furthermore, Contractor failed to perform its obligations under the bond and the Subcontract, rendering recovery of completion costs an impossibility.

Great American's request for a stay of the final order in the matter is therefore denied.

## Conclusion

The Court requests that Ms. Ledbetter prepare a final order reflecting both the original ruling and the denial of the Motion for Reconsideration and Clarification and request for a stay, noting the objections of defense counsel.